Mazie A. DeTarr v. The Ferd. Heim Brewing Company.

**No. 11,665.** (61 Pac. 689.)

1. **Trespass**—*Private Property Devoted to Public use—Liability for Injuries.* Where the public has passed over private property for a long time with the implied permission of the owner or of persons in control of the same, and where it may be said that a portion of the property is temporarily devoted to a public use, persons using the way are not deemed to be trespassers or mere licensees, and the owner or those in control cannot, without liability, make excavations or leave unprotected openings so close to the line of such way as to render travel thereon unsafe.

2. **Landlord and Tenant**—*Liability of Tenant for Negligence.* A tenant who has possession and control of premises is ordinarily bound to keep them in such condition that they will be safe for the public, and such tenant is *prima facie* liable to third persons for damages arising from negligent defects.

3. ———— *Testimony to Establish Liability.*  In such case, testimony as to the relations between the landlord and tenant may be received to establish who was in actual control of the premises, and who was liable for an injury sustained by a traveler from an opening in the path over the property.   .

Error from Wyandotte court of common pleas; W. G. HOLT, judge.  Opinion filed July 7, 1900.  Affirmed.

*T. P. Anderson*, and *J. D. Wendorff*, for plaintiff in error.

*Moore & Berger*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.:  Near the Riverview station, and between the Grandview and Park branches of the elevated street-railway in Kansas City, Kan., is a lot owned by the Ferd. Heim Brewing Company.  On the east end of the lot was a house occupied by the Hicks family, and on the west end was a small business house occupied by a cobbler.  The lot being immediately south of the Riverview station, persons who were transferred from the Grandview to the Park line, as well as those living west and south of the station, generally passed over the lot when intending to take passage on the Park line of the street-railway, and those going west or south from the Park line station, or to take passage on the Grandview line, did the same.  A path had thus been made between the houses mentioned and cinders had been placed thereon.  A water-closet was erected on the lot, near the cobbler's house, which was used by the Hicks family.  About July 1, 1897, the owner of the lot, intending to erect a new building thereon, tried to gain possession of the same, and to induce the tenant, Hicks, to remove therefrom.  It was claimed that consent was given, and a contractor removed the water-closet and other

structures and began grading the lot. After some plowing and grading had been done, Hicks objected to the continuance of the work, and on July 2 instituted an action and caused a restraining order to be served on the owner and the contractor. The vault of the water-closet had been partially filled when the restraining order was served, and the contractor nailed boards over it and left the premises. The public continued to pass along the path which it had made, and near the covered vault. The restraining order was set aside and vacated by the court granting it on August 27, 1897, and though some proceedings for review were taken, it is not shown by the record that the injunction was continued in force. There was litigation between the owner and Hicks as to the possession of the lot, but Hicks remained in possession until March, 1898, when he was removed under a writ of restitution issued in an action of forcible detainer.

On the night of December 25, 1897, and before the removal of Hicks, Mazie A. DeTarr, while walking across the lot with a view of taking a Park line car, fell into the vault and was injured. She and her family had passed over the lot in the morning, but she did not observe that a board had been removed from over the vault, or that there was an opening there. On returning at night she noticed a car coming and increased her speed so as to reach the station in time, and, while walking rapidly, she diverted her course from the path, and fell into the hole. She brought this action, claiming that, there being a path across the lot which was habitually used by the public, the owner was guilty of negligence in not filling up the vault and in leaving it without a secure cover. The defendant denied that it was guilty of negligence,

claiming that it was not in possession of the property when the injury was sustained, and, not being in legal control of the lot, was nowise responsible for the repairs on the premises or for the removal of the cover, which was originally secure. The verdict of the jury was in favor of the defendant, and in answer to special questions the jury found that when the injunction order was served the hole was covered with boards; that the brewing company did not get possession of the premises occupied by Hicks until March, 1898, and that it was then placed in possession by the sheriff; that Hicks lived on the premises at the time of the accident; and that the brewing company had no notice that the hole was open on the night of and before the accident.

Apart from the special findings, it must be assumed that all other controverted facts which had support in the testimony were determined in favor of the defendant. It must be taken as established that the hole was securely covered with boards when the defendant and its employees were compelled to quit the premises by the injunction proceeding, and that before the accident the defendant had no notice that any part of the cover had been removed or that the hole was open. It likewise must be assumed that the defendant was not in possession or control of the premises when the accident happened, nor for more than two months afterward. The path across the lots had been used by the public for a long time—so long that permission by the occupant and owner must be presumed. The plaintiff, therefore, was not to be regarded as a trespasser or as a mere licensee, as she used the way with the implied permission of those in control of the premises. If the defendant had the possession and control of the lot, it owed a duty to the public to

cover or fill up the hole near the path, or to exercise care accordingly, proportioned to the probable danger to persons using the path ; and the jury were properly instructed that if the defendant was in control and possession of the premises, and knew, or by the exercise of diligence could have known, that the vault was open, in time to have filled or covered it, and the plaintiff fell therein without her fault, the defendant was liable to respond in damages to her for the injury sustained.   Under the instructions, we think the jury were warranted in finding that the defendant had not the possession or control of the lot at the time of the injury, and not being in control, and having no notice of the existence of the dangerous opening, it cannot be held liable for the negligence of. the tenant, nor for the injury sustained by plaintiff.

It is a rule of the common law, applicable here, that "the occupier and not the landlord is bound as between himself and the public so far to keep the premises in repair that they may be safe for the public, and such occupier is *prima facie* liable to third persons for damages arising from any defect." (1 Thomp. Neg. 317.   See, also, *Fisher v. Thirkell*, 21 Mich. 1.)

The objection to the admission in evidence of the injunction proceedings is not well founded.   It tended to show who was in possession and control of the premises, and to some extent who was responsible for the casualty.   It was some explanation why the defendant did not completely fill up the vault and why a cover was nailed over it.   The papers in the proceeding in error attempted to be taken from the order dissolving the injunction, although first received in evidence, were subsequently withdrawn from the jury, and no error can be predicated on that.   The testimony as to the notices to quit possession and the pro-

Investment Co. v. Law.

ceedings in the forcible entry and detainer suit went to the question of control of the property, and was properly received, and there is nothing substantial in the objections to the testimony of the officers and other persons as to the efforts which were made to procure the removal of the Hicks family from the property. Some of the language of the instructions given to the jury is criticized, but we fail to see any just ground for complaint in them, or any error in the refusal of those which were requested. The case seems to have been fairly presented to the jury by the charge that was given, and there appears to be sufficent testimony to sustain the findings and verdict that were returned. The judgment will, therefore, be affirmed.