THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY v. JOHN POTTER, *as Next Friend, etc.*

No. 11,916.   (67 Pac. 534.)

SYLLABUS BY THE COURT.

RAILROADS—*Implied License to Cross Right of Way.* Before the public can be said to have acquired an implied license to cross the right of way and tracks of a railroad company, at a place other than a public crossing, so that the company, in the operation of its trains, is bound to anticipate foot-passengers at such place, the path leading to and from such right of way and tracks must be so well defined as to attract public attention and of itself be an invitation to the public to cross. The use must have been continuous and for such length of time that it may be said that the company knew, or in the exercise of ordinary care should have known, that the public was thus using its right of way.

Error from Pawnee district court; J. E. ANDREWS, judge.   Opinion filed January 11, 1902.   Reversed.

*A. A. Hurd,* and *O. J. Wood,* for plaintiff in error.

*H. S. Rogers, Nelson Adams,* and *G. Polk Cline,* for defendant in error.

The opinion of the court was delivered by

GREENE, J. : George Potter, a child of six years, while crossing the tracks of plaintiff in error in the city of Larned, was run upon by one of its trains and injured. He instituted this action by his next friend, John Potter, to recover damages, and judgment was rendered in his favor. The amended petition alleged that while this child was attempting to pass from the south to the north of the company's right of way and over its tracks, not at a public crossing, but at a place where the public had acquired an implied license to cross by reason of long and continuous use by foot-passengers, with the knowledge of and without objection by the railway company, the latter, through its servants and employees, carelessly and negligently ran one of its trains upon and over him, causing him such injury that it became necessary to amputate one of his legs.

Broadway, Topeka and Tolles avenues in the city of Larned run north and south, and Fourth and Fifth streets east and west. The right of way and tracks of plaintiff in error enter the city from the northeast and cross Tolles avenue north of Fifth street and run in a southwesterly direction across Fifth and Fourth streets, Topeka avenue, and Broadway. Several years ago the city, by ordinance, vacated all of these streets where the right of way crosses. At the southwest, where the right of way crosses Fourth street, and between the Brinkman and Wormwood elevators, the former of which is built in Fourth street, there is kept and maintained a cinder path across Fourth street for foot-passengers. The depot and platform of plaintiff in error extend from the south line of Fifth street, between Topeka and Tolles avenues, across Topeka

Railway Co. v. Potter.

avenue.  The Wormwood elevator is on the right of way and the office is about 150 feet south and west of the southwest end of the depot platform.  The distance from the cinder path on Fourth street to the depot platform is from 150 to 200 feet.  The Wormwood elevator is situated on the south side of the south track, and the northeast corner of it is probably eighty feet southwest of the depot platform.  It was between the Wormwood elevator and the depot platform that the child was injured.

It is not claimed by plaintiff below that the place where the child was hurt was a public highway, but it is claimed that for several years prior to this accident the public had continuously crossed and recrossed at and in the immediate vicinity of where the boy was hurt, and, by reason of such constant and continuous use, with the knowledge of plaintiff in error, the public had acquired an implied license to cross at this point, and that, in view of this, it was the company's duty to anticipate persons upon its right of way at this place.  On the other hand, the plaintiff in error contends that the child was a trespasser and that the only duty it owed him was not wantonly to injure him, and that it did not know he was upon the track until he cried out.

At the time of the accident George Potter was only six years old and lived with his parents on the south side of the tracks, on the same side the Wormwood elevator is situated.  On the day of the accident he was sent by his parents to this elevator to meet an uncle who was to take him to the country.  He went to the elevator and waited for a time, but the uncle did not appear.  He then started to go up town, and went to the cinder path crossing Fourth street, but, the passage being blocked with a train from the west, he

undertook to cross at the Broadway crossing, about 100 feet southwest of where the cinder path is over Fourth street; this being blocked—probably by the same train—he started toward the Fourth or Fifth street crossing or Tolles avenue, but seeing a vacant place between the elevator and the depot he tried to cross there, and while attempting to do so the train from the west pulled up alongside of him. While standing between the tracks awaiting the passing of this train, and out of danger, he became frightened or confused and stepped backward and on one of the tracks which he had crossed, and as he did so a box-car, pushed by an engine, struck him and crushed his leg so that amputation became necessary.

The freight-train that blocked the crossing at Fourth street only remained there while taking water, after which it pulled out northeast, not stopping at the station. The way at Fourth street was only blocked a few minutes. This, however, is immaterial in its application to the conduct of this child, as he is not chargeable with contributory negligence. The particular act of negligence relied on by the defendant in error is that the employees of the plaintiff in error, while switching, were pushing a box-car in front of the engine at an unusually high rate of speed, and with no outlook on the front of said car, at a place where they should have anticipated that people might be crossing. When the plaintiff below concluded his evidence the defendant demurred thereto, which demurrer was overruled.

Defendant in error objects to a consideration of this case by this court for the reason that the motion for a new trial was not filed during the term of court at which the case was tried. It appears from the record that on the day the jury returned its verdict the judge

adjourned the term to a certain day, and that within three days after the return of the verdict, plaintiff in error filed its motion for a new trial.   A judge of a district court has the power to adjourn a term of court from one time to another, and a motion for a new trial filed after such adjournment, if filed within the time provided by the statute, is filed during the term.   This contention of defendant in error is therefore overruled.

At the trial George Potter testified that while attempting to cross the right of way he stood between the tracks five minutes at a time when the tracks were clear and that he might have crossed in safety.   The first contention on the part of plaintiff in error is that in not crossing at this time the boy was guilty of contributory negligence and therefore it is not liable.   If he had been a man of mature years and average intelligence this conclusion would be correct, but George Potter was a child of six years, and only chargeable with the proper exercise of the faculties which he then possessed.   He could not understand the danger of going upon the railroad-tracks and cannot be held responsible for lack of capacity to appreciate danger. He is not chargeable with the exercise of that degree of care demanded of one of mature years, whose judgment is not only enlightened by his own observation and experience but by the experience of others.

The plaintiff in error also insists that the court below erred in overruling its demurrer to the evidence. It contends that there was no evidence tending to establish the fact that the public had acquired an implied license, or had been invited to cross its private grounds at the place where this child was hurt; that he and all other persons crossing its right of way at that place were trespassers, and the only duty which it owed persons attempting to cross was not wantonly

2—64 KAN.

or negligently to injure them after discovering their presence. There is no claim that the employees of plaintiff in error wantonly ran its train upon George Potter, as he was not discovered by them until after he was hurt. However much we may sympathize with a child injured as George Potter was, at a time when he was incapable of appreciating the danger to which he exposed himself, under the circumstances of this case we are forced to adopt the contention of plaintiff in error,

Ed. Wheeler testified :

"Ques. You may state whether the public has been in the habit of using that as a crossing. Ans. The public cross there like they do all through the yards.

"Q. The grounds around the depot there? A. Yes, sir.

"Q. When there are no trains there, people are in the habit of taking the shortest cut home? A. Yes, sir.

"Q. Now, for instance, the people living south, when they get off the train, where do they cross? A. Getting off, they would cross right there by the elevator, if they live in that direction ; if they live close there, they would cross wherever they want to go.

"Q. Do you know whether the public has been in the habit of using the place where the boy Potter was injured as a public crossing? A. Yes, sir.

"Q. Now, state the facts in relation thereto. A. They cross right in there.

"Q. You may state how long this has been the habit and custom of the public, if you know. A. About fifteen years.

"Q. One place is just the same as another, so far as that is concerned? A. Yes, sir. But it is customary going down the depot platform, that is, everybody that lives down there ; they go right across there by the elevator."

Wm. M. Jordan testified :

"Ques. Do you know where the boy Potter is claimed to have been injured, on the 29th day of July, 1897?   Ans. Yes, sir.

"Q. Do you know what has been the general custom of the general public at that place?   A. Yes, sir.

"Q. What is it?   A. Sometimes they travel that path, and sometimes where the boy was run over.

"Q. How long has that custom existed, if you know?   A. It has existed a good many years.

"Q. All of these grounds were the same; there was no crossing laid out anywhere by the railroad company—no plankings put in?   A. No, sir; not right there.

"Q. Well, all around the depot grounds and in there, there is nothing to prevent—no fence or anything of that sort preventing a person crossing whereever they see fit?   No, sir.

"Q. They do cross there?   A. They cross whereever they leave a gap."

D. E. Babcock testified :

"Ques. Do you know the locality where it is claimed the train run over and injured George Potter, on the 29th day of July, 1897?   Ans. I know about where it is.

"Q. Do you know what has been the custom of the public in relation to traveling over that ground?   A. I do.

"Q. What is it?   A. Any one, either from the west part of town as far down as Fourth street, would be apt to cross if they were going to the Wormwood elevator, or in going to the depot from that way.

"Q. How long has that custom existed, if you know?   A. Ever since I have lived here.   I do not know how much longer.

"Q. There was nothing to prevent people from wandering around in any part of the yard, unless there were cars in the yards?   A. I think not.

"Q. They all cross there as much one place as another?   A. I suppose.   I do.

"Q. Whichever is the shortest way to go? A. Yes, sir.''

A. E. Jordan testified:

''Ques. Do you know where the place is where it was claimed the Potter boy was injured? Ans. I know just about.

''Q. Now, do you know what the custom of the general public is, or what it was in July, 1897, in passing there — that is, foot-passengers? A. Yes, sir.

''Q. What was it? A. Why, we cross along that track when we go home, and when we go to the depot, or in getting on or off the train, generally crossing on the other side of the elevator.

''Q. Is there a path along where the boy was injured? A. I guess there is no particular path along there; they cross there almost any place.

''Q. You may state how long that custom has existed, if you know? A. Pretty much ever since I have lived there?''

L. P. Wormwood testified:

''Ques. Are you acquainted with the locality where it is claimed the train ran over the Potter boy, on the 29th day of July, 1897? Ans. Yes, sir.

''Q. Do you know what the custom of the public was at that time in relation to crossing the railroad track in that locality? A. I suppose they go back and forth there. I occasionally see them go back and forth there most every day.

''Q. There is nothing to prevent them from crossing one place any more than another; it is perfectly open and smooth? A. Persons cross there if they want to go back and forth.''

The plaintiff below failing to prove an implied license or consent on the part of plaintiff in error to the public to use its yards for a public crossing at or in the vicinity of the place where young Potter was injured, the demurrer to the evidence should have been sustained.

No path or paths on either side of the track converged at any point in this yard.   One desiring to go from either side of these tracks to the other crossed at any convenient point and in any direction desired. There was no concentration at any point; no particular place where it could be said that this indicates a crossing.   A stranger could not have discovered by the appearance of the surface of the ground that the public had been in the habit of crossing at any place between the Wormwood elevator and the depot.   Had there been a well-beaten. path up to and across the right of way where young Potter was hurt, which had been constantly used by the public, it could then be said that this was not only a license but an invitation, on the part of the plaintiff in error, to the public to cross.   Under such circumstances, it would be as much its duty to anticipate foot-passengers at such place as upon a public highway; but such was not the case. People crossed indiscriminately; there was no path. No facts sufficient to charge the plaintiff in error with having given its consent or invited the public to cross over its right of way at this point were proved.

In *Mason v. Chicago, St. Paul, Minneapolis & Omaha R. Co.*, 89 Wis. 151, 61 N. W. 301, it was said:

"Certainly, mere desultory, occasional or fugitive use of a railroad yard by pedestrians at different places cannot impose any duty to exercise more than ordinary care on the employees of the company; the travel must be confined to a certain and well-defined way; it must have been so continuous, frequent and well established as to raise an inference of acquiescence in such use on the part of the company, and to impose upon employees the duty of anticipating that the path might or probably would be in use by foot-passengers when cars were being moved across it."

The evidence in this case falls short of bringing the

plaintiff in error within the rule thus announced. It is true that people had been in the habit of crossing these tracks, but it was in a desultory way. It was a license of their own taking, and they did so subject to the rights of plaintiff in error to the exclusive use of its right of way and to the danger of being hurt. All the streets in the vicinity where this accident occurred had been vacated by the city council, and the railroad company had built its tracks upon and occupied all of these grounds.

One witness testified that this space was generally blocked with empty and standing cars, and that persons desiring to cross climbed over or crawled under them at the most convenient place. This evidence negatives the idea that an invitation had been extended to the public to use these grounds as a crossing.

In *Gaynor v. Old Colony & Newport Railway Company*, 100 Mass. 208, 214, 97 Am. Dec. 96, 98, the court said :

"On the other hand, the law requires no one to provide protection or safeguards for mere trespassers or wrong-doers, nor indeed for those who enter by mere permission, without inducement held out by the owner. Such go at their own risk and enjoy the license subject to its perils. Towards them there exists no unfulfilled obligation or duty on the part of the owner."

In *Ward v. Southern Pac. Co.*, 25 Ore. 433–436, 36 Pac. 166, 23 L. R. A. 715, the language of Mr. Justice Nelson in *Grethen v. Chicago, M. & St. P. Ry. Co.*, 22 Fed. 609, is quoted, as follows :

"Persons living in the vicinity of railroads, who use the tracks or the embankments, or the space between the tracks, as a footpath, are wrong-doers, unless permission is granted by the company so to use

its tracks.   Although  pedestrians, or  the public gen-
erally, travel over  them without objection, people  go
there  at  their own risk, and, as said  by the supreme
court of  Massachusetts, 'enjoy  the  license  subject to
the perils.'   User of this sort will not establish a pub-
lic way over the track or relieve those so using it from
the imputation of being trespassers."

Counsel for defendant in error undertake to  fortify
their  position by citing the  case of *De Tarr v. Heim*,
62 Kan. 188, 61 Pac. 689.   In  that  case  the  public
had habitually, for a period of  years, passed  over  an
outlying lot, from one street-railway depot to ` another,
until a well-defined path  was  made.    This path  had
been covered with cinders for the convenience of pub-
lic travel.   A small building which stood over a vault,
close  to  the path, had  been  removed, and  the  cover
which had once been securely and  safely placed  upon
it became out of  repair.    One of  the  public crossing
over the lot, intending  to  walk  on  the  path, missed
her  way  and  fell into the  vault.    It  was  said  that
this path had been used by the public for such a length
of time that permission by the  occupant and  owner
must be presumed.    The difference between the  facts
in that case and those established by the defendant in
error in this is that in this case  no  well-defined  path
was shown  to  exist.    The  material  facts  which, had
it not been for other circumstances, would have estab-
lished a liability in that case, are wanting in this.

The judgment of the court  below is reversed, with
instructions to sustain the demurrer.

DOSTER, C. J., JOHNSTON, SMITH, JJ., concurring.