No. 20,394.

A. L. MALOTT, *Appellant*, v. THE UNION PACIFIC RAILROAD COMPANY, *Appellee*.

SYLLABUS BY THE COURT.

1. TRESPASSERS—*Crossing Railway Switch Yards—No Public Way*. No public way is established across a railway switch yard merely because pedestrians for many years had so frequently trespassed thereon that they had worn a beaten path across it.

2. TRESPASSERS—*In Railway Switch Yards—Duty of Railway Company*. One who undertakes to cross a railway switch yard of many railway tracks, where engines and cars are likely to be moving at any time in the regular course of the railway's business, is a trespasser and does so at his peril, and the only duty of the railway company and its employees towards such trespasser is not to willfully injure him.

3. SAME. In a Kansas City suburb the defendant railway company has a switch yard of many tracks upon which engines and cars move to and fro frequently. For many years it has been common for people to cross the switch yard notwithstanding a warning sign, "Railroad property, no trespassing," the ever-impending danger of such hazardous crossing, and a safe public highway over a viaduct across the switch yard nearby. A plain path across the tracks had been worn by such travel. When cars impeded such travel, such pedestrians would go around the cars or over or under them. The plaintiff who was one of these pedestrians was injured while thus crossing the switch yard. *Held*, that in the absence of evidence that his injuries were caused by the willful neglect of the defendant or its employees, he can not recover from the railroad company.

Appeal from Wyandotte district court, division No. 3; HUGH J. SMITH, judge. Opinion filed November 11, 1916. Affirmed.

*David F. Carson, James T. Cochran*, and *Alex McIntosh*, all of Kansas City, for the appellant.

*R. W. Blair, C. A. Magaw*, and *T. M. Lillard*, all of Topeka, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff was injured by being struck by some moving cars while he was crossing the defendant's switch yard at Armstrong, a suburb of Kansas City, Kan. The switch yard consists of a maze of railroad tracks running east and west; and notwithstanding the manifest danger

of crossing these tracks and the defendant's posted sign, "Railroad property, no trespassing," this plaintiff and many other people had been accustomed to cross these tracks going to and from their places of employment in the packing houses nearby. A path had been worn across the tracks by such travel. The public highway is a viaduct over the railroad tracks, but is somewhat more circuitous and less convenient than the "short cut" across the switch yard. One of the plaintiff's witnesses testified that when freight cars were standing on the tracks pedestrians "would zigzag to find the openings; probably go up a car length and see an opening and get back to the pathway."

"Q. . . . A little while ago you said when the path was obstructed with cars you would go around the cars? A. Certainly.

"Q. That is the way the people did that you saw going across there, too, was it not? A. Of course they avoided climbing the cars if possible.

"Q. If possible? How would they go if it was not possible to avoid climbing the cars? A. Then they would climb them, I suppose.

"Q. You have seen people climbing over cars, have you not? A. Yes, sir.

"Q. And seen them crawl under them? A. Yes, sir; I have seen people crawl under the cars."

Part of the plaintiff's own testimony is indicative of the circumstances:

"On the morning that I was hurt I walked up to track No. 1. Near the path there is a sign saying 'Railroad property, no trespassing.' I saw that sign before the accident. . . .

"Q. You saw that, and it says 'No trespassing' across here? A. Yes, sir.

"Q. You understood by that sign that you were to stay off that property, did you not? A. That would be the meaning, I suppose.

"Q. That is what you understood by it but notwithstanding that sign that was right there in that path that leads to the track you started that morning to go across the tracks, did you? A. Yes, sir.

· · · · · · · · · · · · ·

"Q. Now, when you crossed that track, were there any cars on any of those tracks? A. There were three cars on track 3.

"Q. Where were they with reference to this path across there? A. One of the cars projected over the pathway something like 10 or 15 feet. I would say.

"Q. About half? A. About half the length of the car.

"Q. Were there any cars on track 4? A. Directly across, there were some cars on track 4.

"Q. You do not know how many? A. No.

Malott v. Railroad Co.

"Q. Where were they with reference to the path? That is, were they east or west of it? A. They stood about 3 feet to the east of the path, as I came—would be coming across.

"Q. Now, did you turn out of the path from track 3? A. I had to leave the path to get around the end of this car.

"Q. What did you do with reference to going back to the path, if anything? A. I came around the car to get back into the path, and to go direct across to my destination.

"Q. Was there anything directly in your way across the path at track 4 when you came up there? A. No, sir.

"Q. When you got on track 4, what happened? A. I started to cross the track, and as I got near the center of the track I was struck in my right side here (indicating) and knocked on my left side, with my head to the west."

A demurrer to plaintiff's evidence was sustained, and the case is brought here for review.

The demurrer was properly sustained. On no ground except that of willful negligence could the railroad company be held liable to this plaintiff. This court has frequently said that even a lawful railroad crossing is itself a warning of danger. Much more is a network of railway tracks in a switch yard, congested with cars, and switch engines going to and fro, "kicking" cars hither and thither, as must be done in the making and breaking up of trains. The fact that many trespassers, like the plaintiff, had worn a path across the switch yard and had persisted in trespassing for many years, swarming around or over or under the cars when the path was blocked by freight cars, did not have the effect of establishing a lawful footway across the defendant's switch yard. The case does not differ in principle from the precedents of this court except to make the nonliability of the railway company more than ordinarily clear. (*Mason v. Mo. Pac. Rly. Co.*, 27 Kan. 83; *Tennis v. Rapid Transit Rly. Co.*, 45 Kan. 503, 25 Pac. 876; *Railroad Co. v. Holland*, 60 Kan. 209, 56 Pac. 6; *Railway Co. v. Potter*, 64 Kan. 13, 22, 67 Pac. 534; *Zirkle v. Railway Co.*, 67 Kan. 77, 72 Pac. 539; *Railway Co. v. Withers*, 69 Kan. 620, 627, 77 Pac. 542, 78 Pac. 451; *Railway Co. v. Jenkins*, 74 Kan. 487, 488, 87 Pac. 702; *Railway Co. v. Wheeler*, 80 Kan. 187, 101 Pac. 1001; *Beech v. Railway Co.*, 85 Kan. 90, 116 Pac. 213; *Morgan v. Railroad Co.*, 91 Kan. 496, 138 Pac. 575; *Adams v. Railway Co.*, 93 Kan. 475, 144 Pac. 999.)

The judgment is affirmed.