**FLEMING v. BROWN et al.**

No. 12986.

Circuit Court of Appeals. Eighth Circuit.

July 30, 1945.

Rehearing Denied Aug. 27, 1945.

for the death of their minor son, Arlie Brown.

The evidence tends to show the following facts: Arlie Brown was killed on the station grounds of the Rock Island Railroad at Scandia, Kansas, as a result of a derailment of a freight train of the railroad at about 9:10 o'clock on the night of November 14, 1941. At the time of his fatal injury, Arlie Brown was sitting in the cab of his truck parked upon a cindered area west of the station building, at a point some 40 feet north of the main line Rock Island track which ran east and west on the south side of the station. Sitting in the single seat of the cab of the truck with him were three other young people, a boy, Dick Garoutte, and two girls, Audrey Thomas and Florence Berggren. The freight train was an eastbound through train of twenty eight cars, traveling at a speed of 30 to 35 miles per hour. At a point some 200 feet west of the station, the second car from the engine, and thirteen cars immediately following, derailed and piled up on both sides of the track from that point to the station, one or more striking the truck in which the young people were sitting. Arlie Brown and Florence Berggren were instantly killed, Dick Garoutte was fatally injured and Audrey Thomas seriously injured.

The Rock Island station lies about a mile south of the business district of Scandia. The connecting public road comes to a dead-end at the station grounds, with a cinder and gravel surface roadway extending from the public road over part of the railroad right of way to the railroad station. The roadway across the station grounds and the cindered parking area on both sides were maintained by the railroad for over twenty five years. No sign was ever erected to limit or prohibit general public use of the roadway and parking area, and the evidence tends to show that people frequently went to this area for their private purposes, such as to visit and watch the trains go through, as well as to do business with the railroad. It also appears that use of this area was the only available method by which a vehicle could readily turn around to return over the public road to Scandia.

There is a conflict in the evidence as to the purpose for which these young people were at the railroad station. Plaintiffs' evidence tended to show that plaintiffs' son had driven there so that Dick

Hale Houts, of Kansas City, Mo. (William S. Hogsett, Alvin C. Trippe, and Henry Depping, all of Kansas City, Mo., on the brief), for appellant.

Maurice J. O'Sullivan, of Kansas City, Mo. (Joseph H. Brady and T. James Conway, both of Kansas City, Mo., on the brief), for appellees.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

Defendant appeals from the verdict and judgment of $7,660 recovered by plaintiffs

Garoutte could get a Rock Island timetable, the two girls accompanying them. According to defendant's evidence, the only purpose of the trip to the station was to see the Rock Island Rocket go through. Plaintiffs rested their case in chief without proof of any specific negligence of the defendant. Defendant then presented evidence tending to show that the accident was caused by the breaking of a defective truck of a New York Central car which defendant had received from the Denver & Rio Grande Western Railroad at Colorado Springs, which defect could not have been discovered without dismantling the truck. Defendant showed also that the train had been given the customary routine inspection three times after the New York Central car was attached and before the accident, without discovering the defect. The train crew testified their only warning was a ball of fire on the tracks which was followed immediately by the derailment. After defendant rested, plaintiffs offered evidence that after the wreck the foreman of a section crew at Courtland, Kansas, five miles west of Scandia, discovered a broken wing rail on the south side of the south rail of the main line at Courtland. The testimony of the section foreman also tended to show that the rail was not broken on the previous afternoon, after which the evening west-bound passenger train, the Rocket, and the train in question had passed over the main line track.

The court denied defendant's motion for directed verdict at the close of all the evidence, and its motion to set aside the verdict and judgment rendered thereon and to render judgment in favor of defendant, in accordance with defendant's motion for a directed verdict. The court instructed the jury, inter alia, that defendant was bound to exercise reasonable and ordinary care to prevent injury to deceased, if the area upon which his truck was parked had been generally used with knowledge of the defendant by the public for parking vehicles to the extent that defendant knew that vehicles might be parked there, and even though deceased was not on the station grounds in connection with business with the defendant; and that it might infer that defendant negligently failed to exercise ordinary and reasonable care towards deceased from the fact of the derailment. The court refused, inter alia, defendant's requested instruction directing a verdict for defendant if none of the occupants of deceased's car went to the depot on any business connected with defendant, but were there for their own entertainment or pleasure; and also refused defendant's requested instruction directing a verdict for defendant if the jury did not find that Dick Garoutte went to the station to obtain timetables, that deceased went there to take Dick for such purpose, and that deceased and Dick remained on the grounds and were there at the time of the accident for such purpose.

On appeal, the defendant assigns as error the above stated action of the trial court.

The issues thus presented to this court for determination are (1) whether defendant was under a duty to the plaintiffs to exercise ordinary and reasonable care in the operation of its railroad, and (2) whether the mere fact of the derailment was sufficient evidence to support a finding by the jury of a failure to exercise ordinary and reasonable care.

It is well settled that this court must apply the law of the State of Kansas, the place of the injury, in the determination of these issues. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

The view of the Kansas law taken by the trial court in regard to the defendant's duty toward deceased is supported by the Kansas cases. In De Tarr v. Heim, 62 Kan. 188, 61 P. 689, it was held that where the public has passed over private property for a long time with the implied permission of the owner and persons in control of the same, and where it may be said that a portion of the property is temporarily devoted to a public use, persons using the way are not deemed to be trespassers or mere licensees, and the owner or those in control cannot without liability make excavations or leave unprotected openings so close to the line of such way as to render travel thereon unsafe. The De Tarr case was cited and distinguished in Atchison, T. & S. F. R. Co. v. Potter, 64 Kan. 13, 67 P. 534, 56 L.R.A. 575, where it was found that no right of way was established because of insufficient use, but the court said (64 Kan. at page 21, 67 P. at page 536, 56 L.R.A. 575): "Had there been a well-beaten path up to and across the right of way where young Potter was hurt, which had been constantly used by the public, it could then be said that this was not only a license but an invitation, on the part of plaintiff in error,

to the public to cross." In the later case of Malott v. Union Pacific R. Co., 99 Kan. 115, 160 P. 978, the court held that in spite of a well beaten path frequently used by the public across a railway switch yard, no public way was established and the users were trespassers. This case, however, turns on its particular facts which show that the crossing was an especially dangerous one over a busy switch yard, consisting of a maze of tracks and that those crossing over frequently had to go over, under and around railway cars to make their way. In the instant case, the railroad maintained the station parking space open to the public, and the issue was correctly submitted to the jury whether the general public had used the parking space to such an extent that the railroad knew or should have known of such general use. It seems clear that the Kansas law imposes the duty on the railroad to use reasonable care to avoid injury to the public on the station grounds. It is not necessary to go so far as the De Tarr case, which imposed a duty to keep the premises safe for the public, for here the injury was caused by the active operation of the train. The dictum in Atchison, T. & S. F. R. Co. v. Potter, supra, applies directly to the present case, and the deficient factor there, a well beaten path, is clearly present here where the railroad itself maintained and cindered a well defined parking space open to the public, which was in fact situated at the end of a main public road and provided the only available space for turning around. The Malott case, supra, is clearly distinguishable on its facts as there the way was over a manifestly and obviously dangerous place, whereas here the parking place was an apparently safe place.

Section 66-234, General Statutes of Kansas 1935, provides: "That railroads in this state shall be liable for all damages done to person or property, when done in consequence of any neglect on the part of the railroad companies." This statute was enacted in 1870 as Ch. 93, Laws, Page 197. In St. Joseph & D. C. Railway Co. v. Grover, 11 Kan. 302, Reprint p. 232, decided in 1871, the Kansas court construed this statute to require the railroad to exercise ordinary and reasonable care to avoid injury to cattle trespassing upon the tracks. The court said, 11 Kan. at page 307, Reprint at page 236: "'In consequence of any neglect,' is the language. Surely, if the company fails to use ordinary care, and is guilty of ordinary negligence, if it fails to make usual and reasonable efforts to prevent the injury, there is some neglect on its part." The statute was later construed in Sewell v. Atchison, T. & S. F. R. Co., 78 Kan. 1, 16, 96 P. 1007, 1013, to invalidate a contract made by an express messenger to relieve a railroad company from liability for injuries received through its negligence while in the performance of his duties upon the cars. The court stated (78 Kan. at page 24, 96 P. at page 1016): "The statute of 1870 * * * was 'made to carry out measures of general policy,' and was 'intended generally to protect the public interests' and 'to vindicate public morals.'"

No Kansas case has been found either applying or refusing to apply this statute to a situation like the one now before this court. This statute furnishes an additional ground to that already stated for our holding that the railroad had a duty to exercise reasonable and ordinary care to prevent injury to Arlie Brown.

 The movement of trains past railroad stations does not in ordinary course result in cars leaving the track and piling up on the station grounds where ordinary and reasonable care has been used in the provision, maintenance and inspection of the means and in the operation, and the derailment shown in this case with the consequent damage, presented an appropriate situation in which to apply the doctrine of res ipsa loquitur. The court properly instructed the jury to consider the evidence as to the cause of the accident and the finding of failure on the part of the railroad company to use ordinary and reasonable care is sufficiently supported by the evidence of its derailment of its train at the place it had reason to expect the presence of members of the public. Mayes v. Kansas City Power & Light Co., 121 Kan. 648, 249 P. 599; Hohmann v. Jones, 146 Kan. 578, 72 P.2d 971.

As we find no error, the judgment is affirmed.