## The City of Winfield v. Tucker Peeden.
### No. 582.

1. CITIES—*Liability for Damages—Personal Injuries.* Where a city of the second class owned and operated a gravel-bank which was a dangerous place, and where the plaintiff received an injury thereat through the negligence of said city's officers and agents, *held*, that the city is liable to respond therefor in damages.

2. PRACTICE, COURTS OF APPEALS— *Case-made.* Where a motion to retax costs appears in the case-made after the certificate stating the contents of the case-made, *held*, that the motion is not reviewable.

Error from Cowley district court ; J. A. BURNETTE, judge. Opinion filed May 12, 1899. Affirmed.

*Joseph O'Hare,* for plaintiff in error.

*Stanley & Graham,* for defendant in error.

Winfield v. Peeden.

The opinion of the court was delivered by

MILTON, J. : In June, 1894, defendant in error was performing labor for the city of Winfield in lieu of his poll-tax. The first day he worked on the streets, and on the morning of the second day, at the request of the street commissioner, he went to a gravel-bank belonging to the city and which had been in use for two seasons, to assist in loading wagons with material to be used on the streets. The petition alleged that the gravel-bank was an extremely dangerous place, and known to be such by the. city officials and the street commissioner, and that the plaintiff was not aware of its dangerous character ; and that while the plaintiff was laboring the bank suddenly caved in, a large quantity of sand and gravel falling upon him and breaking his left leg in two places and crushing his left ankle, whereby he was made sick and unable to walk or to labor for a long period, and was permanently crippled. It was further alleged that said injuries caused the plaintiff to expend $25 for surgical attendance, $60 for nursing, and $75 for board, and to lose the position wherein he had been laboring prior to the injury, to his damage in the sum of $65. Judgment was prayed for in the sum of $1000. The defendant's demurrer to the petition being overruled, it filed an answer containing a general denial and an averment that the plaintiff's injuries, if any, resulted from his own negligence. The jury returned a general verdict in favor of the plaintiff in the sum of $320, and also a number of special findings.

The substance of the special findings is as follows : That the plaintiff was twenty-seven years old at the time of the injury and was a person of ordinary intelligence ; that the gravel-bank was composed of clay,

Winfield v. Peeden.

gravel, and sand, and was about thirteen feet high at
the place where the accident occurred ; that there was
nothing to obstruct the plaintiff's view of the bank
from the point where he was working, which was
about thirteen feet from the bank, and that he was
not keeping any lookout or using any precaution to
avoid injury ; that the danger to be expected from the
falling of the gravel-bank was not " as observable to
the plaintiff as it was to the officers of the defendant,"
and that the plaintiff could not, by using ordinary
observation and diligence, have ascertained that the
bank was liable to fall while he was at work there ;
that while the street commissioner had warned other
workmen, he had not warned the plaintiff of the dan-
ger ; and that when the bank began to fall, one A. J.
Thomas, who was working for the city, and whom the
street commissioner had placed in charge of the load-
ing of the wagons, warned the plaintiff and other
workmen of the imminent danger, and that the plain-
tiff made an effort to escape.    The jury also stated
that they allowed $70 for loss of time, $25 for medical
attendance and medicines, $100 for permanent injuries,
$50 for nursing, and $75 for board.    The defendant's
motions for judgment on the special findings and for
a new trial were overruled and judgment was rendered
in accordance with the verdict.

The special findings are supported by competent
evidence.    While there was testimony indicating that
in the opinion of the street commissioner the bank
was not necessarily a dangerous place, it was not
disputed that it was his practice to notify the work-
men that the place was dangerous.    The wagon
stopped thirteen feet or more from the base of the
gravel-bank, which was practically perpendicular at
that point, and Peeden and the other shovelers were

43—8 KAN. APP.

at work between the wagon and the bank, shoveling loose material and not in any way disturbing the bank itself. The wagon was only partly loaded at the time the bank fell. The warning was given too late to allow the plaintiff to escape, and he was buried to his waist in loose material, resulting in a double fracture of one bone and a single fracture of the other bone of the lower part of the left leg. He was quite ill for some time, requiring the services of a physican and a nurse. The leg was permantly injured, and up to the time of the trial he was unable to earn as much as he had formerly done. He was a colored man and an unskilled laborer.

The plaintiff testified that he had never been at the gravel-bank before and that he did not specially observe it when he began to work, except that he saw it was almost perpendicular and that there was a slight projection of a small mass at the top. He stated that he had no previous knowledge of the danger to be apprehended from the bank falling, and that he had no thought of danger while at work. The sand-bank had been purchased by the city that the material might be used in improving streets.

The supreme court has held, in the case of *In re Ashby*, 60 Kan. 101, 55 Pac. 336, that a man working on the streets of a city, under an ordinance requiring the performance of two days' labor or the payment of three dollars, as poll-tax, is a laborer for the city. Under that decision, we must hold that the relation of employer and employee existed between the parties in this case. While the duty of repairing and improving its streets was imposed on the city of Winfield by law, it is evident that the action of the city in purchasing and in using the gravel-bank was not within the scope of the duty thus imposed. In the use of the

gravel-bank the street commissioner derived none of his powers from the express provisions of the statute, but drew them all from the orders and directions of the city officers. He was acting in the capacity of agent of the city. The municipality maintained a dangerous place, and thus assumed the duty of warning all persons who labored for it at that place of the dangerous character of such work. The commissioner negligently performed a duty imposed by order of the municipality. We think it cannot be said that under the circumstances of this case the danger was so obvious that the plaintiff below must be held to have assumed the risk. To have freed itself from responsibility and liability, the city should have given Peeden seasonable warning of his danger. He was not compelled to work at that place, but he did so willingly because unaware of the dangerous character of the work he was undertaking.

Having become the owner of the gravel-bank, the city, in managing it, is to be held to the same degree of care in preventing damage to others as would be required of a natural person. The doctrine which we think is controlling in this case is thus stated by the supreme court of Ohio in the case of *City of Toledo v. Cone*, 41 Ohio St. 149, 161 :

"Thus, if a municipal corporation acquires real or personal property, and in the discharge of what may be deemed ministerial duties in respect to the same an individual receives injury, through the negligence of its officers or servants, it should be held responsible to that individual. Though not liable for a defect of judgment or discretion, while acting as a state instrumentality in the exercise of legislative functions, yet having, like a private corporation or natural person, become the owner or obtained the control of property, it should not be relieved from the operation of the

general maxim, that one should so use his own as not to injure that which belongs to another.''

We have examined the leading cases cited by counsel for plaintiff in his clear and able brief, with the result that we think none of them in principle conflicts with the views we have expressed.

It is contended that the court erred in refusing to consider the motion of the defendants below to retax the costs. In the case-made the motion to retax appears after the certificate as to the contents of the case-made and precedes the certificate of the trial judge. In the case of *Mutual Ins. Co. v. Sackett*, 5 Kan. App. 660, 48 Pac. 994, it was held that all statements in the certificate of the trial judge not necessary for the purpose of merely showing that the case was properly settled should be treated as surplusage. Under that decision, the action of the trial court in respect to the motion to retax is not reviewable.

As to the alleged error in the admission of the deposition of the witness Lawrence, we find that his testimony was merely cumulative and not essential to the plaintiff's case. The error is not therefore reversible. The judgment of the district court is affirmed.