No. 20,307.

JAMES FROST, a Minor, etc., *Appellant*, v. THE CITY OF TOPEKA, *Appellee*.

SYLLABUS BY THE COURT.

MUNICIPAL CORPORATIONS—*Performance of Governmental Duty—Erection and Maintenance of Hospital—No Actionable Negligence.* Dynamite caps were used in blasting preparatory to installing water and sewer systems in the city's detention hospital while it was under construction. Employees of the city negligently failed to remove an unused sack of caps from the grounds on completion of the hospital. The plaintiff, a child of nine years, was taken to the hospital with his parents, who were afflicted with smallpox, and was allowed to play about the grounds. He found the caps and exploded one of them and was injured. The hospital was established, owned and maintained by the city for the sole purpose of detaining and treating persons afflicted with smallpox. *Held*, the city is not liable in damages for the plaintiff's injury.

Appeal from Shawnee district court, division No. 1; ALSTON W. DANA, judge. Opinion filed July 8, 1916. Affirmed.

*J. J. Schenck, W. I. Jamison,* and *W. Herbert Jamison,* all of Topeka, for the appellant.

*George P. Hayden,* city attorney, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for personal injuries sustained through the negligence of the city. A demurrer to the answer was overruled and the plaintiff appeals.

The petition disclosed that the plaintiff's parents became afflicted with smallpox and were confined in the detention hospital of the city. The plaintiff, a child of nine years, was taken to the hospital with his parents and was allowed to play about the hospital grounds. He found a sack of dynamite caps which employees of the city had taken to the hospital grounds and had neglected to remove or render inaccessible. The plaintiff carried the caps into the hospital, accidentally exploded one of them and injured his hand so that some of his fingers had to be amputated. The answer was that the city established, owned and maintained the hospital for the sole purpose of detaining and treating persons afflicted with the contagious disease of smallpox. Proper sanitation required that the building be equipped with water and sewer systems and these were installed entirely on the hospital grounds in connection with the construction and completion of the building. While excavating for the water and sewer systems rock was encountered which it was necessary to remove by blasting and the dynamite caps belonged to one of several lots which were taken to the premises for use in the conduct of that work. The demurrer to the answer raised the question whether or not the negligence of the city's employees in leaving the dynamite caps where they might be picked up and exploded by the plaintiff was exhibited in connection with the performance by the city of proprietary or of governmental functions. If the latter the city is not liable.

While the hospital, with its equipment and grounds, was property of the city, it was property held and maintained in a public and governmental capacity and not in a private proprie-

tary capacity. The sole object in establishing and maintaining the hospital was to conserve the public health, a purely governmental function exercised under the police power of the state. The enterprise was public and governmental from its inception, and in doing the work of constructing the building and installing the water and sewer systems the city acted as a mere agency of the state in promoting the general welfare. While the dynamite caps were property of the city they were mere contributions to the enterprise the same as building material, water pipe, sewer pipe and other articles necessary to secure the ultimate end in view. If, in performing the work of constructing and equipping the hospital and putting the grounds in condition for occupancy, material of any kind were used or disposed of in a negligent or unsafe way, the capacity in which the city acted shielded it from pecuniary liability. When construction was completed and maintenance of the institution as a detention hospital was begun the relation of the city to the project remained the same, and if for any reason the premises were not safe for occupancy by persons detained in the hospital, the same exemption from liability existed. The decision in the case of *Butler v. Kansas City*, 97 Kan. 239, 155 Pac. 12, which was a detention hospital case, is conclusive. In that case an inmate of the hospital, detained there because afflicted with smallpox, was injured by a splinter in the floor, which it was alleged was maintained in a defective and dangerous condition. The district court overruled a demurrer to the petition. On appeal this court reversed the judgment and directed that the demurrer be sustained. The opinion cites numerous authorities. The syllabus reads as follows:

"Where a municipal corporation maintains a pesthouse for the treatment and isolation of persons who have been exposed to or affected with smallpox, it performs a governmental duty.

"The rule that the governmental agencies of the state are not liable in an action of tort for either misfeasance or nonfeasance is applied to an action against a city to recover damages for personal injuries resulting from the defective condition of the floor of a pesthouse where plaintiff, who was afflicted with smallpox, was confined by the city authorities." (Syl. ¶¶ 1, 2.)

It makes no difference in principle whether the building or the grounds appurtenant to the building be defective, and it makes no difference whether the dangerous agency act by pene-

tration or by concussion. The employees of the city who caused the hospital grounds to be unsafe by negligently failing to remove the portion of the supply of dynamite caps not consumed in blasting may be personally responsible for the consequences of their conduct but the city is not.

The plaintiff cites the case of *Cherryvale v. Studyvin,* 76 Kan. 285, 91 Pac. 60. The case is stated in the opinion as follows:

"Studyvin sued the city for damages alleged to have been caused to his building by the negligence of the city in blasting a ditch for a sewer in an alley at the side of the building. He recovered judgment for $554, and the city claims that he was entitled to recover only the value of two panes of glass, broken by a rock thrown while blasting.

"Whether the city was negligent in doing the blasting is practically the only issue under the pleadings." (p. 286.)

The principles invoked by the city in the present controversy were not discussed. None of the numerous previous decisions of this court illustrating those principles was cited. (*The State, ex rel., v. Hunter,* 38 Kan. 578, 17 Pac. 177; *Peters v. City of Lindsborg,* 40 Kan. 654, 20 Pac. 490; *La Clef v. City of Concordia,* 41 Kan. 323, 21 Pac. 272; *City of Caldwell v. Prunelle,* 57 Kan. 511, 46 Pac. 949; *The State v. Water Co.,* 61 Kan. 547, 60 Pac. 337; *Freeman v. Chanute,* 63 Kan. 573, 66 Pac. 647; *Water Co. v. Cherryvale,* 65 Kan. 219, 69 Pac. 176; *Asher v. Water Co.,* 66 Kan. 496, 71 Pac. 813.)

The city of Cherryvale conceded liability for a part of the injury done. The concession was made because of the declarations of this court in cases like that of *Freeman v. Chanute,* 63 Kan. 573, 66 Pac. 647, in which the distinction between proprietary and governmental action was drawn with clearness and accuracy.

"There are two kinds of duties which are imposed on a municipal corporation—one arising from the grant of a special power, in the exercise of which the municipality is a legal individual; the other arising from the use of political rights under the general law in the exercise of which it is a soverign. The former power is quasi private and is used for private purposes; the latter is public and used for public purposes. . . . In the exercise of its quasi-private or corporate power a municipality is like a private corporation, and is liable for a failure to use its power well or for an injury caused by using it negligently. In building its waterworks, gas, electric-light plants, sewers, and other internal improvements which are for the exclusive benefit of the corporation, it

is in the exercise of its quasi-private power and is liable to the same extent as are private corporations . . . But in the exercise of the political or public power conferred on it as an arm of the state for the benefit of all the people, its officers, although appointed or elected by the city, paid and subject to be discharged·by it, are not the agents of the municipality, but of the state, and the corporation is not liable either for their misfeasance or nonfeasance." (p. 577.)

The power and the duty to conserve the public health are not matters of private and local interest to the city alone but are public and general in their nature and belong to the same class as the power and·duty to conserve the public peace.

The plaintiff cites the case of *Bowden v. Kansas City,* 69 Kan. 587, 77 Pac. 573. The syllabus reads as follows:

"A municipal corporation is performing a ministerial public duty in maintaining a fire station, and is liable in damages to an .employee for personal injuries resulting from the neglect of the corporation to furnish him a reasonably safe place in which to work."

It will be observed that the word "ministerial" was used and not the word "governmental" in describing the nature of the city's duty. The gist of the decision was that whether the maintenance of a fire station be referred to public or to private corporate power, a special, private, corporate duty exists to maintain and manage corporate property so that city employees shall have safe places in which to work. (*Edson v. Olathe,* 81 Kan. 328, 334, 105 Pac. 521.)

·The plaintiff cites authorities in which it is said that after legislative judgment and discretion have been exercised and nothing remains but ministerial execution of work which has been laid· out a city may be liable for negligence in the conduct of such work. The statement is unobjectionable as a statement of principle if confined in its application to its proper sphere. If the work be work undertaken in the exercise of purely governmental power, performance of the work will also involve the exercise of governmental power. In a certain sense maintenance of a park, or a jail, or a detention hospital may involve the discharge of ministerial duties, but such duties are none the less governmental in character.

"The executive function partakes in any case of the same quality as the legislative function. If an ordinance be ministerial in character, the city will be liable for the failure of its officers to execute the ordinance the same as a private individual would be. If, however, the ordinance be

Cramer v. Bank.

one enacted pursuant to the city's governmental power, the city is not liable in damages for the nonfeasance or for the misfeasance of its officers in executing it." (*Everly v. City of Gas*, 95 Kan. 305, 306, 147 Pac. 1134.)

The answer stated a complete defense to the action and the judgment of the district court overruling the demurrer to the answer is affirmed.