No. 28,987.

AUGUST LUEBKEN, *Appellant*, v. THE CITY OF HANOVER, *Appellee*.
(283 Pac. 501.)

Opinion filed January 11, 1930.

*J. R. Hyland*, of Washington, for the appellant.
*Charles L. Hunt* and *Frank C. Baldwin*, both of Concordia, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff sued the city of Hanover to recover for injuries sustained while employed in hauling sand and gravel to be spread on the city streets.

The city rented a small tract of ground for a gravel pit about. a mile and a half away. It employed workmen to remove the top layer of earth so as to uncover the sand and gravel. Then it offered work to all who chose to haul from the quarry. The pay was one dollar for 4,200 pounds, the workmen furnishing their own means of transportation.

Plaintiff was a farmer who had had considerable experience in hauling gravel and in bridge construction work. He had a truck and two hired men. With these employees and his truck he began to haul sand and gravel for the city. The city did not direct the workmen how to get the sand and gravel out of the quarry. They backed their wagons or trucks as close to the face of the ledge as possible and picked or quarried under it to cause the material to fall into their vehicles and thus minimize the work of shoveling by hand. The face of the bank was twelve or fourteen feet high. Plaintiff foresaw the possibility of injury by this practice and suggested that it could be avoided by quarrying the gravel bank in benches of a few feet at a time. One day while Frank Lutsch, an employee of the city, was using a pick on the face of the ledge a boulder fell and injured him. Plaintiff was aware of that mishap. A few days later plaintiff sustained the injury for which he sued in much the same way. He testified:

"When we started working there was but one bench, and it got high and we have to be careful and I told some of the boys we have a cave-in and we better get away from this cave-in, and work in there until we have two benches; . . . On the Monday before I got hurt on Friday, Mr. Lutsch he got a pick and Frank Landoll and I helped him there, but it would not get loose, it was too hard. . . . Frank Lutsch said, 'Let me have that pick,' and I said, 'All right.' He took up the pick and tried to pick it down . . . it would not come, . . . then it let loose and just shoved Mr. Lutsch on his face into the ground. He was injured and laid up for three or four days. One night I talked with Mr. Urban, one of the council, about it, this was the night before I got hurt. . . .

"I talked to Mr. Urban [city official] several times, especially about that danger. . . . I was working on the top bench, and Mr. Schroeder [plaintiff's hired man] was working below, the first bench had been taken away so that I was on the middle bench, was getting the gravel ready to load; I done some picking and got it ready to load, and I was standing there and don't know if I had any pick in hand or not but it came down so quick I don't know what happened. The wall of sand where I was working was possibly six or eight feet high, . . . I had no warning at all, it happened so quick, I was not looking for anything; . . . I could not tell how much sand or gravel fell on me, it fell down and knocked me over and I was partly buried

and had turned around and had my face lying beside the truck; my leg was partly covered up, and I could not get out; they picked me up and took me out of there and took me to town. My foot was twisted around, my ankle bruised and both bones were broken. . . .

". . . I had hauled gravel from that pit about four or five weeks, had hauled some before from other pits. . . .

". . . I think that it was right after Lutsch was hurt, that I talked to the boys and said let's bench it. . . .

"I had hauled from other pits. Fifty or sixty loads out of Emil Funk's pit when I built a bridge. I took contracts from the county sometimes for building cement bridges. I have had to do with hauling of gravel sometimes. There had been other cave-ins. . . .

"Q. Did you know when you dug back with your pick underneath the second layer to get that loose gravel to load that the gravel might fall? A. Yes, we done that and we picked it down and let it fall down but you could pick it back four or five feet and it would come down.

. . . . . . . . . . . .

"Q. But you realized that if you did dig underneath overhanging gravel that it would fall down? A. But it wouldn't get out of the way and we didn't think much of the danger part of it. Had done some picking before I got hurt. I had picked down underneath and half way up. The truck was down at the bottom. It was just after I had completed my picking that the cave-in occurred. . . . No one gave me directions as to how to load my truck. All we had to do was to take our truck, go out to the gravel pit, load up as we saw fit, drive in and dump it and had to get the gravel ready."

Schroeder, one of plaintiff's hired men and a witness for him, testified:

"When I got back with the load he was there waiting for me so we could pick the gravel loose. He had done some picking underneath about a foot and three or four feet wide. Just enough to get it to fall down. That was the purpose."

Jandera, another witness for plaintiff, testified:

"I have worked in gravel before. I sure knew that if you worked underneath gravel and undermined it the top would fall down, and knew that when it caved down it might fall on me."

Plaintiff's petition charged the city with negligence in failing to furnish plaintiff a safe place in which to work, and alleged that he did not know or appreciate the danger of the gravel embankment caving in on him.

In its answer the city pleaded various defenses, including a general denial, contributory negligence, and assumption of risk.

At the conclusion of the evidence the trial court instructed the jury to return a verdict for defendant, which was done; and judgment was entered accordingly.

Plaintiff appeals, and centers his argument on the propriety of an instructed verdict in the circumstances.

There was no material dispute of fact in this lawsuit. The main question of law was whether plaintiff assumed the risks of his employment. The facts clearly showed that he did. He was an experienced man in such work. Nobody authorized to speak for the city promised him to alter the conditions. Plaintiff knew that to use a pick at some low point on the face of the embankment would cause masses of gravel to fall. That is why he did use it. His purpose was to cause the gravel to tumble into his truck and thus lighten his own and his hired men's labor in shoveling and loading it. By his own testimony, ingenuous and candid as it was, plaintiff proved his knowledge of the working conditions and his appreciation of the danger; and as there was no promise by his employer to alter or improve the conditions, by all the familiar rules of law the plaintiff did assume the risks. (*Rush v. Mo. Pac. Rly. Co.*, 36 Kan. 129, 12 Pac. 582; *Walker v. Scott,* 67 Kan. 814, 64 Pac. 615; *Railway Co. v. Loosely,* 76 Kan. 103, 90 Pac. 990; *Iron-Works Co. v. Green,* 79 Kan. 588, 100 Pac. 482; *Barnes v. Akins,* 101 Kan. 359, 166 Pac. 474; *Ernst v. Railroad Co.,* 105 Kan. 706, 185 Pac. 1053; *Lively v. Railway Co.,* 115 Kan. 784; 225 Pac. 103; *Davies v. City of El Dorado,* 126 Kan. 153, 267 Pac. 7; *Hunter v. Barnsdall Refining Co.,* 126 Kan. 277, 268 Pac. 86.)

Among cases cited by the appellant is *Stone v. City of Pleasanton,* 115 Kan. 378, 223 Pac. 312, where the city permitted a guy wire charged with a high-tension current to hang so close to a traveled path that plaintiff was severely burned thereby. The liability of the city in that case was predicated on the breach of its familiar and well-established duty to keep its streets, sidewalks and traveled ways safe for use.

Other cases cited by appellant may readily be distinguished from the one at bar by a rule of law which was highly pertinent in this case, although it does not seem to have been raised in the pleadings or stressed at the trial. That distinction is this: In the matter of renting a quarry and hiring teamsters to haul sand and gravel therefrom to spread on the public streets, the city was engaged in a governmental undertaking—discharging a function of a public character, in contradistinction with some city projects and activities which are said to be of a proprietary or quasi-private corporate character. This distinction between the public and quasi-private

capacities of a city was not as clearly understood by bench and bar when *Winfield v. Peeden,* 8 Kan. App. 671, 57 Pac. 131, cited by appellant, was decided as it is now—that in the absence of statute imposing liability on a city for the negligent discharge of its governmental functions the municipality cannot be mulcted in damages. (See note to *Barree v. Cape Girardeau,* 197 Mo. 382, 6 L. R. A., n. s., 1090; *Kippes v. Louisville,* 140 Ky. 423, 30 L. R. A., n. s., 1161; and *Radford v. Clark,* 113 Va. 199, 38 L. R. A., n. s., 281.) In recent years that principle of law has been clearly elaborated and repeatedly applied by this court. (*Bruce v. Kansas City,* 128 Kan. 13, 276 Pac. 284, and citations.)

The judgment is affirmed.

JOCHEMS, J., not participating.