No. 40,045

CHESTER K. STOLP, *Appellant*, v. THE CITY OF 'ARKANSAS CITY, and THE AETNA CASUALTY AND SURETY COMPANY, *Appellees*.

(303 P. 2d 123)

Opinion filed November 3, 1956.

*Harry O. Janicke*, of Winfield, argued the cause and *John A. Herlocker*, and *Warren D. Andreas*, both of Winfield, and *George W. Stanley*, of Arkansas City were with him on the briefs for the appellant.

*Kirke W. Dale*, and *Donald Hickman*, both of Arkansas City argued the cause and were on the briefs for the appellees.

The opinion of the court was delivered by

ROBB, J.: This is an appeal by the plaintiff below from an order of the trial court sustaining a demurrer of defendant, The Aetna Casualty and Surety Company, to the petition of plaintiff, and also from an order sustaining a demurrer of defendant, the city of Arkansas City, to the amended petition of plaintiff.

The appellant will be referred to herein as plaintiff, The Aetna Casualty and Surety Company as Aetna, and the city of Arkansas City as the city.

Plaintiff filed his original petition on October 13, 1954. In brief, the petition alleged that on October 27, 1952, plaintiff, who was suffering from ureteral colic, was admitted to Memorial Hospital as a private patient for remuneration; the hospital was located in, owned and operated by the city; on October 28, 1952, plaintiff underwent surgery for which spinal anesthesia was administered; this

anesthesia caused him to have a loss of feeling in and a loss of motor function of his feet and limbs; it was alleged these facts were or should have been known to the city by its agents, servants, and employees (hereinafter referred to as employees) whose names were unknown to the plaintiff but known to the city; after surgery plaintiff was returned to his hospital room in the sole care of the city—through its employees—which city owed him the duty to exercise due care in treating and caring for him; the city—through its employees—negligently and wrongfully applied under plaintiff's heels and feet an unprotected hot water bottle which contained water of such boiling temperature that it caused large blisters to appear over the entire posterior surface of both of plaintiff's heels; when feeling returned to his limbs and feet plaintiff complained of the burning of his feet to the city's employees, but they failed to do anything to alleviate plaintiff's pain and suffering or to notify his doctor until late that afternoon; plaintiff's doctor discovered third-degree burns one and one-half inches in diameter under the blisters on each heel; plaintiff remained in the hospital as a patient and received regular treatment for the burns until November 4, 1952, when he was released; thereafter it was necessary for him to use crutches and he also required further treatment; later it became necessary for plaintiff to return to the city's hospital for skin grafts, which were taken from his left thigh and applied to each of his burned heels; the skin, tendons, and tissues which had sloughed away from his burned heels caused pain and suffering to plaintiff that would continue permanently.

The petition set out plaintiff's occupation, the amount he was damaged because of being able to devote only half time to his occupation on account of extreme pain, and the amount of damages for medical, hospital, and doctor bills, both present and future. It was also stated that plaintiff had refused to pay one of the city's hospital bills presented to him.

It was further alleged that the city procured a policy of insurance from Aetna on March 1, 1952, the exact terms of which were unknown to plaintiff, but it provided that Aetna would protect the city against losses and damages due to malpractice, error or mistake in rendering or failing to render medical, surgical, nursing or other sanatory treatment to patients; the policy was written for the benefit of the city and this plaintiff as its patient in the hospital; the policy was in effect at all times herein complained of.

Finally, it was alleged that in a written demand under date of January 28, 1953, made according to law, the city was notified thereof and it in turn notified Aetna in accordance with the terms of the insurance policy. A copy of the demand was attached to the petition.

On December 13, 1954, Aetna filed a demurrer to this petition based on two grounds. The first was that several causes of action were improperly joined. The second was that the petition did not state facts sufficient to constitute a cause of action in behalf of the plaintiff against Aetna.

The trial court sustained this demurrer on May 31, 1955, and permitted plaintiff to file an amended petition eliminating all reference to Aetna and any description of the issuance of an insurance policy which sought judgment against Aetna. This matter presents one phase of the instant appeal.

Plaintiff complied with the trial court's order by interlineation and the original petition appeared thereafter as so amended.

At this stage of the proceedings on June 6, 1955, the city demurred to the amended petition on the ground that it failed to state facts sufficient to constitute a cause of action in favor of plaintiff and against the city. This latter demurrer by the city was sustained by the trial court on June 29, 1955. Hence we have the other phase of the present appeal.

A proper notice of appeal was served on the attorneys of record for both the city and Aetna and service was acknowledged and proof thereof by affidavit was waived by those attorneys on July 8, 1955.

In this appeal the questions are presented to this court in the same order in which they came before the trial court for its determination. The first relates to the correctness of the order sustaining the demurrer of Aetna and the second to the correctness of the order sustaining the demurrer of the city.

After examining the petition we conclude that the trial court, although it did not give its reason, or reasons, therefor, was correct in sustaining the demurrer as to Aetna on the grounds that the petition failed to allege facts sufficient to state a cause of action in favor of plaintiff and against Aetna as an insurance carrier for the city.

This court fully realizes the importance of this case and the fact that this is the first time the precise question hereinafter treated has come up in an appeal in the manner in which it is here presented. Through the years this court has adhered to a doctrine of absolute immunity for hospitals irrespective of their private or public char-

acter until the recent decision in *Noel v. Menninger Foundation,* 175 Kan. 751, 267 P. 2d 934, in which this court unanimously propounded the rule that,

"Charitable institutions are liable for torts of their servants from which injury proximately results to a third person, whether stranger or patient, and whether the patient is a paying or nonpaying patient. . . ," (Syl. ¶ 8.)

and thereby overruled a number of its previous decisions.

We are now required to go further than we did in the Menninger case, which involved a privately-owned hospital, because the appeal here under consideration involves a municipal hospital owned and operated by the city. For convenience the amended petition will be referred to hereafter as the petition.

There is no question that the action set out in the petition in this case is a damage action for personal injuries to plaintiff proximately caused by the negligent acts of the city through its employees. Both parties refer to the situation as such in their respective briefs and arguments. Likewise there is no dispute as to proper statutory service of written demand.

In considering the next question of whether the trial court erred in sustaining the city's demurrer, we turn first to our state constitution which provides as follows in article 12, section 5:

"*Cities.* Provision shall be made by general law for the organization of cities, towns and villages; and their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, shall be so restricted as to prevent the abuse of such power. . . ,"

from which it is quite clear that cities can exist only by and through the statutes, and they shall have only such power as is prescribed by statute with restrictions to prevent the abuse thereof. (See West's Kansas Digest, Municipal Corp., § 57.)

The city is conceded to be a second-class city and under the statutes it has the power to sue and be sued. (G. S. 1949, 12-101.)

The petition did not definitely disclose how the particular hospital here involved was established by the city, but the statutory provisions authorizing the establishment of hospitals in second-class cities are to be found in G. S. 1949, chapter 14, article 6. The petition stated that the hospital was operated by the governing body of the city, which allegation makes the following sections of chapter 14 pertinent here:

"The governing body of such city shall be vested with the power, authority and control of said hospital and nurses training school. Said governing body shall have exclusive control of the expenditure of all moneys collected to the credit

of the hospital and training school fund or the fund of either of them and the purchase of site or sites, the purchase or construction of any hospital or training school building or buildings, and the supervision, care and custody of the grounds, rooms or buildings purchased, constructed, leased or set apart for that purpose. Said governing body shall have power to appoint a suitable superintendent or guardian or both and necessary assistants and fix their compensation and shall have power to remove such appointees and to do all things necessary to properly conduct said hospital and training school." (14-644.)

"Every hospital established under this act shall be for the benefit of all the inhabitants of said city and of any person falling sick or being injured or maimed within its limits, but every such inhabitant or person shall pay to the governing body of the city, or such officer as it shall designate for such city hospital, a reasonable compensation for occupancy, nursing, care, medicine or attendants, according to the rules and regulations prescribed by said governing body, such hospital always being subject to such reasonable rules and regulations as said governing body shall adopt in order to render the use of such hospital of the greatest benefit to the greatest number. Said governing body may waive the payment to such governing body of compensation from any person who by reason of misfortune is unable to pay therefor; and said governing body may exclude from the use of such hospital any and all inhabitants and persons who shall willfully violate such rules and regulations; and said governing body may extend the privileges and use of such hospital to persons residing outside of such city upon such terms and conditions as said governing body may from time to time by its rules and regulations prescribe." (14-647.)

"The governing body of the city shall have power to determine whether or not patients presented at said city hospital for treatment are subject to charity, and shall fix prices for compensation for patients, as the said governing body deems proper, the receipts therefor to be paid to the treasurer of said city and credited by him to the hospital funds." (14-651.)

It is clear to us that the city was operating the hospital under and by virtue of statutory authority and was not doing an *ultra vires* act. Thus we need not consider that element.

This brings us to the point of determining the more sweeping question of whether the city, as contended by it and so determined by the trial court, was acting in a governmental capacity, or whether, as contended by plaintiff, the city was acting in a proprietary capacity. There is no question that a city or town has the dual capacity stated above. (*Rose v. City of Gypsum*, 104 Kan. 412, 417, 179 Pac. 348; Hayt on Law of Hospital, Physician, and Patient, 2d ed., chap. 17, p. 183.) This is an old and very familiar question to this court as is evidenced by the number of cases in our reports involving one phase or another of it. There is very little, if any, compatibility among the cases from other jurisdictions or among textbook writers, so that to set out an array of such authorities here

would merely tend to confuse the issue. (*Perry v. City of Wichita*, 174 Kan. 264, 268, 255 P. 2d 667.)

The general rule is well established that where there is an exercise of power by a city or town which serves the general public at the expense of all without charge, the city or town is acting in a public or governmental capacity and is not liable for torts committed by its agents, servants, and employees in the furtherance of that activity. (*Harper v. City of Topeka*, 92 Kan. 11, 139 Pac. 1018; *Butler v. Kansas City*, 97 Kan. 239, 155 Pac. 12; *Hibbard v. City of Wichita*, 98 Kan. 498, 159 Pac. 399; *Frost v. City of Topeka*, 98 Kan. 636, 161 Pac. 936, and see, also, second opinion in the same case at 103 Kan. 197, 173 Pac. 293; *Foster v. Capital Gas and Electric Co.*, 125 Kan. 574, 265 Pac. 81; *Wray v. City of Independence*, 150 Kan. 258, 92 P. 2d 84; *Shoemaker v. City of Parsons*, 154 Kan. 387, 118 P. 2d 508; *Rhodes v. City of Kansas City*, 167 Kan. 719, 208 P. 2d 275; *Ahrend v. City of Kansas City*, 173 Kan. 26, 243 P. 2d 1031; *Perry v. City of Wichita*, 174 Kan. 264, 268, 255 P. 2d 667; *Perkins v. City of Lawrence*, 177 Kan. 612, 281 P. 2d 1077; 26 Am. Jur., Hospitals and Asylums, § 12, p. 594.)

These authorities cover only a few of the cases submitted to this court over the years and they involve such governmental activities as fire protection, police regulations, sewer facilities, public parks, zoos, swimming pools, pest houses, detention hospitals, poor farms and the repair, maintenance, and improvement of streets. There are exceptions to this general rule, but the elements thereof are not present here. Such governmental functions of a city or town may be either mandatory or permissive under a statute. In the instant case the statutory provisions permit rather than make it a duty of a city to establish a city hospital.

The city points out, and correctly so, that there is no provision in the statutes that liability shall attach to the city or town for damages to others proximately caused by the negligence of employees in the exercise of a governmental function. (*Luebken v. City of Hanover*, 129 Kan. 443, 447, 283 Pac. 501; *Rose v. City of Wichita*, 148 Kan. 317, 80 P. 2d 1078.) Since that point is not a deciding factor in our case, we need not discuss it herein.

It is also included in the general rule covering the dual capacity of cities and towns that when there is an activity or function in a private or proprietary capacity for the special or immediate profit, benefit, or advantage of the city or town, or the people who com-

pose it, rather than for the public at large, then the city or town is in competition with private enterprise and is accountable for the torts of its employees the same as any other private corporation or individual. (*McGinley v. City of Cherryvale,* 141 Kan. 155, 158, 40 P. 2d 377; *Krantz v. City of Hutchinson, et al.,* 165 Kan. 449, 196 P. 2d 227; West's Kansas Digest, Municipal Corp., §§ 723-734; 4 Hatcher's Kansas Digest, rev. ed., § 33; 2 Antieau on Municipal Corporation Law, § 11.04, pp. 13-16; *Henderson v. Twin Falls County,* 56 Idaho 124, 50 P. 2d 597; 101 A. L. R. 1151, anno. 1166.)

Without reiteration here it may be noted that many of the authorities already cited as discussing the general rule concerning the exercise of governmental functions by a city or town also thoroughly cover the exercising of proprietary functions.

We have had a number of cases holding that a particular enterprise engaged in by a city was proprietary and not governmental but their facts were different from those outlined in the instant petition. We come now to the point which in the judgment of previous authorities is the most difficult to determine in this type of case. That relates to the application of the rules previously laid down to the situation before the court at this time. (*Freeburne v. City of Emporia,* 176 Kan. 503, 506, 507, 271 P. 2d 298.) It is elementary that each case must be decided upon the facts and circumstances involved in it. (4 Dillon on Municipal Corporations, 5th ed., 2837.) However, there is a very interesting discussion on this subject in *Schroeder v. St. Louis,* 360 Mo. 293, 228 S. W. 2d 677, 25 A. L. R. 2d 200, anno. 203, 228, *et seq.* (See, also, 18 McQuillin on Municipal Corporations, 3rd ed., 212.)

Plaintiff contends that all governmental immunity should be abolished, but the circumstances in this case do not justify such a sweeping and far-reaching conclusion; likewise, the contention of the city that all municipal hospitals should have governmental immunity from tort liability without qualification so far as its dealings with its patients are concerned is not of sufficient persuasiveness to justify that kind of holding. There is a modern trend to limit rather than to expand the immunity afforded cities and towns in their activities as is set out in the case of *Krantz v. City of Hutchinson, et al.,* supra, and also by some of the more modern textbook writers. Without doing violence to the rules of *stare decisis,* however, we are of the opinion that under the allegations of this petition and the provisions of the statutes, the type of municipal hospital provided here is one

which possesses the elements of a proprietary rather than a governmental function in that primarily any contract between a patient and the city is one of a private and personal nature for pay and the proceeds are placed in a hospital fund which provides a direct profit, benefit, or advantage to the city and its inhabitants as against a benefit to the public in general. We are not concerned now with what the proof offered by the parties will show but, as stated before, we are passing only on the sufficiency of the petition to state a cause of action against the city. We think it does sufficiently state such a cause of action and that the trial court erred in sustaining the demurrer of the city to plaintiff's petition.

Other contentions raised by the parties have been noted but we do not believe they need determination at this time.

The order sustaining the demurrer of the defendant insurance carrier is affirmed and the order sustaining the demurrer of the defendant city is reversed.

THIELE, J., concurs in the result.

PRICE and FATZER, JJ., dissent from that part of the syllabus and corresponding part of the opinion which reverses the order sustaining the city's demurrer to the petition.