No. 45,533

Della Smith, a/k/a Mrs. Ollie Smith, *Appellant,* v. The Board of Education of Caney School District No. 34, Charles Lingle, Doyle O. Burch, Russell Powell, Max Dick, Jim Meyer and Dr. Robert Moore, Board Members; Ray McKinney, Superintendent and Cole E. White, *Appellees.*

(464 P. 2d 571)

Opinion filed January 24, 1970.

*Glen Tongier,* of Coffeyville, argued the cause, and *Paul Lamb,* of Coffeyville, was with him on the brief for the appellant.

*Clement H. Hall,* of Coffeyville, argued the cause, and *Roy Kirby,* of Coffeyville, was with him on the brief for the appellees.

The opinion of the court was delivered by

Hatcher, C.: This appeal stems from a controversy over liability for personal injuries sustained by an elderly woman when she fell down unlighted basement steps in a high school building at Caney, Kansas.

The defendant, The Board of Education of Caney School District No. 34, owned and controlled the high school building in the city of Caney. Among the facilities in the school building was a Community Center room located in the basement of the school. Access to the basement from outside the school building was gained through a ground level entrance to the building, thence down a short flight of stairs to the basement level where the Community Center room was one among several of the basement rooms. In

1948, the Board of Education had adopted a written policy concerning the use of the community room, and the kitchen in connection therewith, by responsible individuals or clubs, church groups and other similar organizations. The policy authorized the use of the room with the occupant to pay certain nominal charges for its use, such charges to be for the purpose of paying, at least in part, utility bills, janitor services and maintenance of the equipment, furniture, dishes, etc., used in the room. These fees, when collected, were placed in a separate fund from other school funds and designated as the Community Center Fund. The fund was used only for the purpose of replacement and maintenance of the room and fixtures. The reservations for the room by responsible groups were made by contact with the clerk of the defendant Board of Education.

Sometime prior to October 21, 1965, the head of the Montgomery County Agricultural Extension Program located in Independence, Kansas, called the clerk of the defendant Board of Education requesting that the Community Center room be reserved for the night of October 21, 1965, for a district meeting of a County Home Demonstration Unit. The meeting was to be sponsored by the local Caney unit acting as host. The reservation was made and the $3.00 charge provided by the school board's policy for this type meeting was eventually paid by the Independence office.

On the evening of October 21, at some hour between 7 and 7:30 p. m., plaintiff, who was the vice president of the Home Demonstration Unit, drove to the school house to attend the meeting. When she arrived it was dark. She entered the school building and, although there were no lights on in the area of the stairway leading to the basement, she proceeded down the stairway, missed a step near the bottom and fell to the floor receiving the injuries for which she claims damages in this action.

Plaintiff filed suit for damages against the School Board, the individual members thereof, the defendant, Cole E. White, who was the janitor or caretaker for the building and the defendant, Ray McKinney, who was the Superintendent of Schools and as such operated and controlled the school property. The plaintiff's claim for damages was based on a contention that the defendants White and McKinney were negligent in their failure to have the stairway from which plaintiff fell lighted and that such negligence was attributable to the Board of Education and the individual

members thereof since the Community Center room was being operated by the latter defendants in a proprietary capacity.

On motions for summary judgment the trial court dismissed the action as to the Board of Education and as to the individual members of the Board of Education of Caney School District No. 34.

The case continued to trial before a jury as to the defendants, Ray McKinney, Superintendent of Caney School District, and Cole E. White, custodian of the high school building. The jury returned a verdict in favor of the two remaining defendants and against the plaintiff. The trial court accepted the verdict and ordered it filed.

The plaintiff has appealed.

We will first consider appellant's contention that the trial court erred in ruling as a matter of law that the Board of Education of the Caney School District No. 34 and the individual members of the board in their representative capacity were engaged in a governmental function and subject to governmental immunity from tort actions.

Although the appellant objects to the dismissal of the parties defendants on motion for summary judgment, there does not appear to have been a genuine issue as to any material fact determinative of the question of whether the particular act constituted a governmental function.

It would appear that the only question before us on this issue, as framed by the parties, is whether, as a matter of law, under the undisputed facts, the permissive use of the building was a governmental function.

Our attention is called to K. S. A. 72-1623 which authorizes the boards of education to permit use of school buildings for community purposes in the following language:

". . . The board shall hold the title to, and have the care and keeping of all school buildings and other school properties belonging to the city school district. The board may, in its discretion, open any or all school buildings for community purposes, and may adopt rules and regulations covering such use of school buildings."

The statute would simply indicate that the school board was not acting without statutory authority. It would not be determinative of the question before us as governmental functions may be either mandatory or permissive.

In *Carroll v. Kittle*, 203 Kan. 841, 457 P. 2d 21, we attempted to state some general rules which would aid in the determination of

the troublesome problem of what constitutes proprietary functions as distinguished from governmental functions. We said in the opinion:

"We now come to the most troublesome problem of what constitutes a proprietary function. We are mindful of what was said in 60 A. L. R. 2d at page 1204:

" 'The general tests provided by the courts for determining whether a particular municipal [governmental] function may be regarded as governmental or proprietary have not proved adequate for the resolution of particular questions; and as a result the courts have frequently treated such questions on their individual merits, often reaching at least superficially conflicting results.'

"It should be stated as elementary that each case must be governed by its own particular facts. However, we may reach a rather broad understanding to which a particular set of facts may be applied. It may be said that when a state by itself, or through its corporate creations, embarks on an enterprise which is commercial in character or which is usually carried on by private individuals or private companies, it is engaged in a proprietary enterprise (*Stadler v. Curtis Gas, Inc.*, 182 Neb. 6, 151 N. W. 2d 915).

"We have also laid down a rule for determining whether in operating a hospital, cities or towns are engaged in proprietary or governmental functions. In *Stolp v. City of Arkansas City*, 180 Kan. 197, 303 P. 2d 123, it is stated:

"It is also included in the general rule covering the dual capacity of cities and towns that when there is an activity or function in a private or proprietary capacity for the special or immediate profit, benefit, or advantage of the city or town, or the people who compose it, rather than for the public at large, then the city or town is in competition with private enterprise and is accountable for the torts of its employees the same as any other private corporation or individual. . . .' (p. 202.)" (p. 849.)

Although the test as stated may leave much to be desired, a more detailed and refined statement has not been found possible, hence each case is governed by its own particular facts.

We do not believe that the permissive use of the community room in any way savored of a commercial enterprise. Neither do we believe that the use of the community room resulted in any special or immediate benefit to the school district.

The appellant stresses the fact that a charge of $3.00 was made for the use of the room. The clerk for the Board of Education testified as to the use and purpose of the fund as follows:

"Q. The $3 that is charged, is that charged regardless of the number of people?
"A. Yes sir.
"Q. In the organization?
"A. Yes sir.
"Q. — that use the room?
"A. That is right.

"Q. Is it charged whether they use the kitchen that is connected with it?
"A. Now that $3, they are entitled to the kitchen.
"Q. If they want to use it?
"A. Yes, and we have dishes and coffee pots and all kinds of utensils.
"Q. Then the $3 that is taken in is put in a separate fund, is it not?
"A. Yes sir.
"Q. Is there a name to that fund?
"A. I just call it the Community Center.
"Q. Community Center Fund.
"A. That is right.
"Q. And what are proceeds that go into that fund used for, Miss Liberman?
"A. Well, we buy tables; we buy dishes. Several weeks ago these ladies that cook for the Lions Club down there, of course, dishes are broken and I spent some fifty or sixty dollars here several weeks ago for new dishes and things.
"Q. Is the income because of the use of the Community Room used for anything other than to perpetuate the furniture?
"A. No sir.
"Q. And furnishings in that room?
"A. That is all it is for is for the Community Center."

The argument that the nominal charge left a profit constituting a commercial enterprise after considering lights, janitor service, kitchen furnishings, dishes, tables, dining room and wear and tear on each, is not convincing even though a substantial amount has accrued in the community room fund.

The school board and its employees were operating a high school building which is a governmental function. We must not place a too narrow restriction on the use of school buildings. They are occupied little enough during the course of a year. School buildings are maintained for educational purposes. Education embraces either mental, moral or physical powers and facilities. Education is not limited to children. The middle aged or the aged may also benefit. We would not say that a school board encouraging, or a school building used for, debate societies, musicals, future home makers, home demonstrations, etc., is extending activities beyond those anticipated in our schools and educational system insofar as the activities do not interfere with the usual educational program and are not commercial in nature.

We are forced to conclude that the permissive use of the community room by the Home Demonstration Unit was a part of and in itself constituted a governmental function. We have disposed of the issue as presented by the parties; however, what has been said here and the conclusions reached are not to be construed as a con-

clusion that school districts were liable for torts committed while operating in a proprietary capacity prior to the decision in *Carroll v. Kittle,* supra, and the date fixed therein.

The appellant next contends that the trial court erred in not ruling that the purchase of a certain owners, landlords and tenants policy of insurance from the Western Casualty and Surety Company constituted a waiver of governmental immunity.

We cannot agree. The immunity of the state from actions for tort arising out of the performance of governmental functions extends to its governmental agencies. (*Smith v. Higgins,* 149 Kan. 477, 87 P. 2d 544.) Only the legislature has the authority to waive this immunity. There must be express statutory waiver before the state or its agencies may be subject to suit while operating in a governmental capacity. (*Purity Oats Co. v. State,* 125 Kan. 558, 264 Pac. 740.)

Such immunity from suit is never waived or surrendered by inference or implication. (*Construction Co. v. Board of Administration,* 105 Kan. 291, 182 Pac. 386.) That which governmental agencies cannot do directly they should not be permitted to do indirectly. Permitting such agencies to waive governmental immunity by simply taking out insurance would be the equivalent of permitting a direct waiver. The appellant cites a limited number of cases from foreign jurisdictions which she claims are to the effect that the procurement of insurance is a waiver of immunity. Be that as it may, such a ruling is not in harmony with the rule announced in our decisions as to the waiver of immunity.

Perhaps it should be added that neither the policy nor its specific terms are before us. Neither are we informed of the liability which the insurance company may have assumed. These questions are not before us. We are informed that the policy did not contain a waiver of immunity clause.

Having disposed of the case insofar as applicable to the Board of Education and its members, we now proceed to consider the appellant's claimed errors in the trial of the case against the superintendent of the school district and the custodian of the high school building.

The appellant's most serious contention as to these appellees is that the trial court erred in instructing the jury that appellant was a licensee and that the only duty owed her by the defendants was

to refrain from willfully, wantonly and recklessly injuring her but should have instructed that appellant was an invitee.

There appears to be no quarrel between the parties as to the duty owed a licensee or invitee under the Kansas law. The parties accept the rule as laid down in *Graham v. Loper Electric Co.*, 192 Kan. 558, 389 P. 2d 750. We stated:

"Negligent injury of a licensee will not create a cause of action unless it is equivalent to wilfullness or wantonness. A mere licensee takes the premises as he finds them and assumes all risks incident to the condition of the premises. The owner or occupant of the premises may make any lawful use or changes in its property creating dangerous conditions without liability to a licensee for injury therefrom. (*Hogan v. Hess Construction Co.*, 187 Kan. 559, 358 P. 2d 755.) The limited liability or immunity from liability for injuries to a licensee applies to one who is lawfully occupying the premises as well as to the owner.

"The owner or occupant of premises owes a much higher degree of care to avoid injury to an invitee than to a mere licensee. The owner or occupant of premises is liable to an invitee for injuries resulting from failure to exercise reasonable or ordinary care for the invitee's safety. The duty to exercise ordinary care is active and positive, and no element of wilfullness or wantonness need be present. The inviter has the duty to protect an invitee against any danger that may be reasonably anticipated. The owner or occupant of premises is charged with the duty of exercising reasonable care to keep the premises in reasonable safe and suitable condition so as to avoid injury to an invitee or of warning an invitee of concealed perils of which the owner or occupant knows or should know by the exercise of reasonable diligence. . . ." (p. 561.)

The question remaining for our determination is whether the appellant entered the school building as an invitee or a licensee.

There is considerable conflict of authority as to what is necessary to constitute one an invitee. However, this court in *Graham v. Loper Electric Co.*, supra, followed the general rule announced in 65 C. J. S., Negligence, § 43 (1). The rule is now to be found in 65 C. J. S., Negligence, § 63 (41), p. 716. The rule as there stated requires no refinement. It reads:

"Many cases define an invitee as a person who goes on the premises of another in answer to the express or implied invitation of the owner or occupant on the business of the owner or occupant or for their mutual advantage. Whether a person entering the premises of another is an invitee depends on the purpose or the nature of business which brings him on the premises. If the purpose of the entry or visit is one of common interest or mutual advantage, the visitor is considered an invitee.

"One entering premises on invitation does not enjoy the status of invitee unless the entry is made in connection with the business or purposes of the owner. Only a person who goes on the land for the purpose of carrying on a

transaction for the benefit of both parties or the benefit of the owner can attain the status of invitee. To establish an inviter-invitee relationship, there must be some real or supposed mutuality of interest in the subject to which the visitor's business or purpose relates. If the invitation is purely for the benefit, convenience, or pleasure of the one invited, he is a licensee, . . ."

We cannot see how the transaction under consideration was to result in any benefit to the owner of the building. We have stated previously in this opinion that the nominal charge of $3.00 to those using the community room to compensate for lights, janitor service, kitchen furnishings, dishes, tables, dining room and wear and tear on each did not constitute a commercial transaction. Certainly there was no real benefit accruing to the school board for the use of the room.

Regardless of how designated the transaction does not rise to the dignity of a rental creating the relationship of landlord and tenant.

We can see nothing in the transaction other than a permissive use of the community room on the payment of $3.00 to reimburse the school district for the costs mentioned above.

The use being permissive and of no special benefit to the school district the appellant was a mere licensee.

The appellant has raised other alleged trial errors pertaining to instructions and admissions of evidence. They are all founded on the proof of simple negligence as their basis. Under the conclusions of law which we have reached, only proof of willful, wanton and reckless injury would support a judgment. Alleged errors as to proof of simple negligence would be immaterial and therefore will not be reviewed.

The judgment is affirmed.

APPROVED BY THE COURT.

FATZER, J., dissenting: I must respectfully dissent from paragraph (3) of the syllabus and the corresponding portion of the opinion. In my judgment, the court's opinion misconceives the status of the plaintiff's presence upon the school premises the night she was injured. For reasons hereafter stated, the plaintiff was an invitee and not a licensee.

The Community Center Room was located in the basement of the high school building in question. Access to the room from outside the building was gained through a ground-level entrance, and down a flight of stairs to the basement. The electric lights in the stairs leading to the Community Center Room were a part of

the circuit of lights in the basement and it was White's duty, as custodian, to turn the lights on prior to the time the room was to be used.

The evening the plaintiff was injured, the Community Center Room was reserved for the Caney Chums Home Demonstration Unit which had paid the fee of $3 for its use that evening. The evidence was undisputed the steps leading to the Community Center Room were unlighted and that White failed to turn the lights on.

In 1948, the recreation room and kitchen in the school building were opened to the public for community purposes pursuant to written rules and regulations adopted jointly by the board of education and the Lions Club of Caney. (See K. S. A. 72-1623.) Those rules and regulations provided that the Community Center Room and kitchen were available to any responsible group or individual upon the payment of a small fee to cover janitor service and replacement of equipment. Clubs, family reunions, church groups and other similar responsible groups were included. The fees, when collected, were placed in a separate fund from other school funds and designated as the Community Center Fund. Reservations for the room were made with the clerk of the Board of Education.

An invitee is a person who enters or remains on land of another upon an express or implied invitation which carries with it an implied representation or assurance that reasonable care has been used to prepare the premises, and make them safe for his reception. (Restatement, Second, Torts, Sec. 332, [a.].)

In *Lemon v. Busey,* 204 Kan. 119, 461 P. 2d 145, this court stated that rules set forth in Restatement, Second, Torts, Sec. 332, defining an invitee are confirmed in our decisions. An invitee, as set forth in Sec. 332, is defined as follows:

"(1) An invitee is either a public invitee or a business visitor.

"(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

"(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with the business dealings with the possessor of the land."

No claim is made the plaintiff was a "business visitor," as defined in subsection (3) above.

In the *Lemon* case it was said that the fact a member of the public is invited to visit does not make him a public invitee, but the purpose of his visit determines his status. However, an invitation is essential to establish the status of an invitee, and any words or conduct of the possessor which lead or encourage the visitor to believe his entry is desired may be sufficient for the invitation. In Restatement, Second, Torts, Sec. 332, it is said:

"*c. Factors important in determining invitation.* In determining whether a particular person is an invitee, the important thing is the desire or willingness to receive that person which a reasonable man would understand as expressed by the words or other conduct of the possessor.

.It is immaterial that the person is one whom the possessor is not willing to receive as an invitee if the possessor's words or other conduct are understood, and would be understood by a reasonable man, as indicating the possessor's willingness. The nature of the use to which the possessor puts his land is often sufficient to express to the reasonable understanding of the public, or classes or members of it, a willingness or unwillingness to receive them . . ."

From the record it is obvious to me the purpose of the written policy of the Board of Education was to invite responsible groups and members of the public of the Caney community to enter or remain in the Community Center Room and to use its facilities for clubs, family reunions, church groups and other similar responsible organizations, and to hold it open for that purpose. This is evident from the fact that for approximately 20 years the room was continuously made available for birthday parties, showers, bean dinners, reunions, meetings of the Lions Club, and other organizations, upon payment of the stipulated fee. As indicative of the extent of the Community Center Room, there was $1,505.35 in the special fund accumulated from small fees, which was used solely to buy tables, chairs and other furniture, and recently the clerk of the Board of Education had spent from $50 to $60 to replace broken dishes.

I next turn to the nature or purpose of the plaintiff's visit since that determines her status as an invitee. (*Lemon v. Busey,* supra, p. 123.) The plaintiff was vice president of the Caney Home Demonstration Unit which had reserved the Community Center Room on the evening in question and had paid the stipulated fee. After she entered the building and while on her way to the kitchen of the Community Center Room, she fell as a result of the unlighted stairs. It is evident she was on the school premises as a member of the public to use the Community Center Room for the purpose for which it was held open to the public as would be understood by a

reasonable man from the words or conduct of the Board of Education. (*Fleming v. Brown*, 150 F. 2d 801; *Davis v. Central Congregational Society*, 129 Mass. 367, 37 Am. Rep. 368; *Lemon v. Busey*, supra, pp. 124-126.) In my opinion, the plaintiff had legal status of an invitee.

The district court erred in its instructions 9, 10, 11 and 12. I would reverse the judgment with directions to grant the plaintiff a new trial so as to permit the jury to determine under appropriate instructions whether the defendants, Ray McKinney, as superintendent, and Cole E. White, as custodian, failed to carry out their duties with reasonable care to make the premises safe for the plaintiff's reception.

FONTRON, J., joins in the foregoing dissent.